

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 24, 2018

**BY ECF & HAND DELIVERY**
The Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

> Re:  **United States v. Denver McFadden**,
>      **S1 17 Cr. 463 (LAK)**

Dear Judge Kaplan:

The Government submits this letter in response to the defendant Denver McFadden's sentencing submission dated August 20, 2018.  The defendant is scheduled to be sentenced on September 5, 2018.  The parties and the Probation Department agree that, under the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), the Guidelines range applicable to the defendant's conduct is 292 to 365 months' imprisonment (the "Stipulated Guidelines Range"), with a mandatory minimum of five years' imprisonment.  The Probation Department recommends a sentence of 144 months' imprisonment, followed by a lifetime term of supervised release.

For the reasons that follow, the Government submits that the defendant poses a risk of recidivism and a danger to the community.  In light of the risks posed by the defendant and the seriousness of his conduct, which includes sexual acts perpetrated upon a 14 year-old minor victim (the "Minor Boy" or "Victim"), the solicitation of a live video feed of the Minor Boy performing sexual acts, the solicitation of images of child pornography, the continued enticement of the Minor Boy, and the enticement of other minor victims, the Government respectfully submits that a substantial sentence of incarceration, followed by a lifetime of supervised release, is sufficient, but not greater than necessary, to comply with the purposes of sentencing.

## BACKGROUND

### A.  The Defendant's Conduct

The circumstances surrounding the defendant's conduct are heinous.  Beginning in January 2017, the defendant, then 67 years old, began communicating with the Victim, a 14 year-old boy, over the Internet.  Specifically, the defendant communicated with the Minor Boy on a website called Chat Avenue, which hosts chat rooms under various titles, including "Boys Chat," "Girls Chat," and "Teen Chat."  The defendant and Minor Boy then continued their communications over email.  During

the course of their exchanges in January 2017, the defendant and the Minor Boy engaged in an online live video "masturbation chat" with one another. The Minor Boy also sent between 10 and 15 images of child pornography to the defendant.

The defendant, who had informed the Minor Boy that he would be in New York for business, induced him to meet at a hotel for purposes of engaging in sexual activity. In the days preceding the meet, the defendant emailed the Victim that he was "so excited to meet u by the M&M store next week I will let u know day and time . . . mmmmmmmmmmmm, you are so hot," and "OH GOD . . . , I AM SOOOOOOOOOOOOOOOOOOOOOOOO EXCITED, YOU ARE BEAUTIFUL, MY NEW BABY BOY . . . chat u soon, next week is gonna be wonderful." The defendant also stated explicitly what he was expecting from the encounter. For example, the defendant instructed the Minor Boy over email that "wow, I am so wanting u, don't cum Monday or Tue. so u save up lots for me…that will be so HOT. i get excited every time I think about you. Xooxxo" and "what i want is to be inside you and kiss you at same time and us suck tongues." The defendant further told the Victim that he would try "to bring some baby oil, for us both to use and it will slide right in. I can not fucking wait…so Tue is good?"

On January 31, 2017, the defendant traveled from Kentucky, his home state, to New York, met up with the Victim, and took him to a hotel. There, they showered together and engaged in sexual activities, including oral sex and penetration. This was the Minor Boy's first time having sex. Following the meeting, the defendant enticed the Victim for more, emailing "write me back? Did you not like me? I loved it. . .and will be back in a month or two, was hoping we could hang out, you are awesome."; "Wow I can't stop thinking bout it . . . . it was better than awesome . . . did u like it as much as I did? Can we do a 2nd time next month? xoxooxox, miss you"; and, among other emails, "I loved kissing u with your cum in my mouth . . . . and u kissing me. Mmmmmmm."

In the following weeks, the Victim's family contacted law enforcement authorities. The New York City Police Department ("NYPD") then began using an undercover agent ("UC") to pose as the Victim and continue communicating with the defendant. Between on or about March 4, 2017, to on or about April 19, 2017, the defendant communicated with the UC agent, posing as the Minor Boy, and arranged a second time to meet to "do like before . . . .so FUN." The defendant agreed to meet with the UC, posing as the Victim, on April 19, 2017, after the Victim got out of school. The defendant booked a hotel room, and when he arrived at the agreed-upon meeting place, in front of the theater showing the Lion King musical, he was arrested by law enforcement officers.

Following the defendant's arrest, law enforcement authorities executed search warrants, including on the email account the defendant used to communicate with the Minor Boy and the UC. That account showed that the defendant was enticing a number of other minors as well, engaging in sexually explicit communications and attempting to arrange to meet up with them for purposes of having sex. To take a few examples:

- Between in or about September 2016 and at least in or about March 2017, the defendant communicated with C.E. over email. In the course of those communications, even after minor C.E. confirmed that he was *not* 18 years old, but younger, the defendant stated "I really want you BADDDDD. are u ever on chat anymore? what name u use? u in boys chat?" Among other things, the defendant

asked the minor for sexually explicit photos, exchanged sexually explicit photos with the minor, discussed in graphic detail the sexual activities he wanted to perform with the minor, encouraged the minor on several occasions to get on a live chat to masturbate together, and attempted to arrange times and places to meet in person for purposes of having sex.

- Between in and about September 2016, to at least in and about January 2017, the defendant also communicated via email with W.P., who he had met in a teen chat room. Among other things, the defendant exchanged sexually explicit photographs with W.P., discussed in detail the sexual activities he wanted to perform with W.P., and asked W.P. to engage in a live chat masturbation on "chateen." On one occasion W.P. informed the defendant that he could not meet up on "chateen" because his mom came home, and on another occasion he informed the defendant that he had just returned home from school. Significantly, the defendant instructed W.P. as follows: "I also want to know if as my slave, can u find me any young guys, like 13 up that when I come we can hang out with them to…. would u do that for me?

- Between in and around November 2016 to at least in and around April 2017, the defendant engaged in graphic sexual communications with minor A.Y., who sent the defendant a picture of his face and told him it was taken one year ago, when he (A.Y.) was 13 years old. When A.Y. asked what the defendant looked like, the defendant responded by sending him a sexually explicit image and asking "u want it? its yours….if u want it."

- The defendant similarly met minor D.H. in a chat room, and continued email communications with him between in or about September 2016 to at least in or about January 2017. As with the other victims, the defendant exchanged sexually explicit photographs with D.H., discussed in detail the sexual activities he wanted to perform with D.H., asked D.H. to engage in a live chat masturbation on "chateen," and attempted to meet with D.H. Although the defendant, entirely unprompted, in one email wrote "I am so glad you are 18 so we can legally do this" the defendant also instructed D.H. to "be sure and delete all the messages off your email," "just for our safety so no one sees them." D.H. had informed the defendant that he could not meet the defendant at McDonalds, because that is where "a lot of kids from [his] school go" and that he could meet the defendant at his house right after school.

## B. The Defendant's Criminal History

Although the defendant has no criminal history points, this was not the defendant's first sexual offense involving a minor. On or about January 12, 2008, the defendant was charged in Kentucky in connection with his peering through the hole in a bathroom stall at an 11 year-old boy who was using the adjacent stall. The defendant was overheard saying "taking my clothes off" and "looking at young male bodies" over the telephone while he was still inside the bathroom. The defendant ultimately received a conditional discharge for this conduct.

In addition, in 1993, the defendant received a deferred prosecution in connection with a Florida charge of exposing sex organs; lewd and lascivious behavior, and in 2001, was charged with public indecency.

### C. Procedural History

On or about July 20, 2017, a grand jury in this District returned an indictment charging the defendant with one count of coercion and enticement of a minor to engage in illegal sexual activity, in violation of Title 18, United States Code, Section 2422(b), and one count of attempted coercion and enticement, in violation of the same statutory provision.

On or about February 22, 2018, the defendant pleaded guilty, pursuant to a plea agreement with the Government, to a two-count Superseding Information, which charged one count of traveling with intent to engage in illicit sexual conduct, in violation of Title 18, United States Code, Section 2423(b), and one count of receipt of child pornography, in violation of Title 18, United States code, Section 2252A(a)(2) and (b)(1).

Pursuant to the parties' plea agreement, the parties stipulated to an offense level of 40 and a Criminal History Category of I, resulting in a Stipulated Guidelines range of 292 to 365 months' imprisonment, with the second count carrying a mandatory minimum of five years' imprisonment.

The Probation Department agrees with the parties' calculation of the applicable Guidelines Range. The Probation Department recommends a sentence of 144 months' imprisonment, below the Stipulated Guidelines range, yet nevertheless significant. In Probation's view, while the defendant's history of abuse and mental health issues contributed to his commission of the instant offense, a significant term of incarceration is required because the defendant was not deterred by the ramification of his previous sexual offense involving a minor, has committed a serious "hands on" offense involving the victimization of a minor, and continues to pose a danger to the community.

### DISCUSSION

The circumstances of the instant offense demand a substantial period of incarceration. The 18 U.S.C. § 3553(a) factors particularly relevant here include the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence to the defendant and to other similarly situated individuals, and to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(A)-(C).

First, the seriousness of the instant offense cannot be overstated. The defendant's crime is odious. He preyed upon a vulnerable minor boy 44 years his junior, first through a teen chat room and then in private email exchanges, ultimately booking a hotel room for the boy's first sexual experience. He solicited the boy to send child pornography over the internet, including engaging in a "masturbation chat" with the victim. At the same time this was happening, the defendant was in communication with a number of other minor boys, attempting to meet with them for the same purposes. The defendant knew these individuals were underage (some of them young teens) he knew it was wrong to do what he was doing (as evidenced by him telling at least one of the victims to delete his emails, as well as his plea colloquy), and yet he continued to solicit child pornography, engage in

graphic sexual exchanges, and attempt to meet up with them.  Indeed, he instructed one of his victims, whom he repeatedly called his "slave" to find other 13 year-old boys with whom he could meet. Ultimately, a substantial term of incarceration is necessary to provide just punishment for this incredibly serious offense.

Second, a substantial term of incarceration is necessary to afford adequate deterrence and protect the public from further crimes of the defendant.  The defendant, in sexualizing and sexually abusing a 14-year-old boy, and attempting to do the same with others, has demonstrated that his inappropriate sexual impulses know little bounds.  Contrary to the defendant's bald statement that he is not a danger to the community, the reality is that he has an admitted sexual addiction involving vulnerable child victims, notwithstanding that he has otherwise had close and healthy relationships with family members and adult partners.  Indeed, the psychological evaluation performed by Dr. Heather Auton in October 2017, confirms that the defendant has a history of "excessive involvement in risky behavior."  (*See* PSR ¶ 53).  While the defendant enrolled in a qualified Sex Offender Treatment Program in Kentucky following his arrest on federal charges [1] (*see* PSR ¶ 54), the program's disclaimer that "Participation in and/or completion of the Sex Offender Treatment Program does not infer that the potential for Mr. Denver McFadden to decide to commit further acts of sexual abuse/violence has been eliminated," inspires no confidence that the defendant will not reoffend.  The defendant's sentencing submission does not support, as a substantive matter, that he has overcome his addiction or that he will not reoffend.  In short, he remains a danger to children.

Notably, the defendant faced local publicity and lost his approximate 30-year career in education as a result of a sex offense, that is, propositioning an undercover officer in 2001.  Yet, the defendant's conduct worsened, and in 2008, he was convicted of disorderly conduct with respect to a sex offense involving an 11 year-old boy.  Notably, he has not come to terms with the seriousness of his behavior from any of these past experiences.

Ultimately, the defendant's history of inappropriate sexual conduct involving minors and mental health issues put other minor children at risk that the defendant will make yet another bad choice resulting in incalculable harm.  A stiff sentence is therefore necessary both to successfully deter the defendant and protect the public from further predatory behavior on his part.

Moreover, a substantial period of incarceration is necessary to deter others from similar criminal conduct.  This Court is positioned to send a strong message that sexual abuse of children—especially when hands-on conduct is involved—will be met with severe consequences.  A substantial

---

[1] The defendant was already facing state charges surrounding his conduct with the Victim at the time of his federal arrest.

term of imprisonment will send an important message to similarly situated individuals contemplating, or already involved in, the same conduct.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: ____/s/ Tara M. La Morte_____
Assistant United States Attorney
Southern District of New York
(212) 637-1041

cc:     Bennett Espstein, Esq. (via ECF)